UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY RAMOS, and individual, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOOG Inc.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CV 19-10775-AB (SSx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND** |

Plaintiff Henry Ramos ("Plaintiff") filed a Complaint in Los Angeles County Superior Court on November 21, 2019, alleging that Defendants MOOG Inc. and DOES 1 through 100 (collectively, "Defendants") violated multiple California labor laws. (Complaint ("Compl."), Dkt. No. 1-1 at Ex. A.)) On December 20, 2019, Defendants removed the case to this Court. (*See* Notice of Removal "NOR," Dkt. No. 1.) On January 17, 2020, Plaintiff filed the instant Motion for Remand. ("Motion," Dkt. No. 10.) Defendants filed an Opposition ("Opp'n," Dkt. No. 11), and Plaintiff filed a Reply. ("Reply," Dkt. No. 12.) Finding this matter appropriate for resolution without oral argument, the Court vacated the hearing set for February 14, 2020 pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7–15. (Dkt. No. 13). For the following reasons, the Court **DENIES** Plaintiff's Motion.

1.

## I. BACKGROUND

Plaintiff is a citizen of California who was employed by Defendants as a non-exempt hourly employee at its facility in Torrance, California. (Compl. ¶ 5.) Plaintiff claims that Defendants "established pay policies which do not compensate [its] employees for the time they actually worked and also failed to provide the legally mandated paid rest breaks and as a result Defendants have failed to pay all wages due[.]" (Compl. ¶ 8.) Specifically, Plaintiff alleges that "Defendants failed to pay overtime wages at the legal overtime pay rate; failed to provide paid rest periods; failed to timely furnish accurate itemized wage statements; violated Labor Code § 203; and conducted unfair business practices." (*Id.*)

Plaintiff's Complaint asserts seven causes of action: (1) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 204, 218, 510(a), 1194, 1198); (2) Failure to Pay Minimum Wages (Cal. Lab. Code §§ 1194, 1197); (3) Failure to Pay Overtime Wages at the Legal Overtime Pay Rate; (4) Failure to Provide Paid Rest Periods (Cal. Lab. Code §§226.7, 516); (5) Failure to Timely Furnish Accurate Itemized Wage Statements (Cal. Lab. Code §§ 226); (6) Violation of Labor Code Sec. 203; and (7) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*). (Compl. at 1; *see also id.* ¶ 2.) Plaintiff brings these claims on behalf of a putative class, (*id.* ¶ 1), and his Complaint identifies seven sub-classes: (1) the Overtime Class, (2) the Minimum Wage Class, (3) the Overtime Rate Class, (4) the Rest Period Class, (5) the Wage Statement Class, (6) the LC203 Class, and (7) the 17200 Class. (*See* Compl. ¶ 29 a-g (defining sub-classes)).

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). "The burden of establishing federal subject matter

2.

jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 908 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

Pursuant to the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction over certain class actions. 28 U.S.C. § 1332(d)(2). To remove a case to federal court under CAFA, the defendant must establish that (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007).

## III. DISCUSSION

Plaintiff argues that this action should be remanded to Los Angeles County Superior Court because Defendants have not carried their burden of proving the requisite amount in controversy of $5 million by a preponderance of the evidence. The Court disagrees.

### A. CAFA Requirements for Federal Subject Matter Jurisdiction

Again, CAFA jurisdiction requires minimal diversity, a class of more than 100 members, and an aggregate amount in controversy exceeding $5 million. *Serrano*, 478 F.3d at 1020–21. The Parties do not dispute that Plaintiff's class exceeds 100 members or that the parties are minimally diverse.[1] Thus, the Court must only

---

[1] The class size requirement is met because, while the Complaint does not identify a specific number of class members, it states that the class likely exceeds 100 individuals. (Compl. ¶ 32 ("[I]t is estimated that the membership of the Classes numbers greater than 100 individuals.")) Further, MOOG's records indicate that there are 519 total prospective class members within the timeframe specified in the Complaint. (NOR ¶ 15). The diversity requirement is also met because MOOG is a New York corporation with its principal place of business in New York, and the prospective class will contain only California citizens. (NOR at 3–4; *see also* Compl. ¶ 5 ("The relevant employees are Defendants' non-exempt current and former employees, who are California citizens[.]").

3.

determine whether Defendants have satisfied the amount in controversy requirement of $5 million for CAFA jurisdiction to vest in federal court.

### B. Defendants Establish by a Preponderance of the Evidence that the Amount in Controversy Exceeds $5 Million

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id.* However, if "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so" pursuant to 28 U.S.C. section 1446(c)(2)(A). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). "[N]o antiremoval presumption attends cases invoking CAFA[.]" *Id.* at 89. "[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197 (citing *Rodriguez v. AT & T Mobility Serv. LLC,* 728 F.3d 975, 981 (9th Cir. 2013)). Then "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)) (internal quotation marks omitted). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies." *Id.* at 1198. "[W]hen a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 922 (9th Cir. 2019).

Here, Plaintiff's Complaint does not state an aggregate amount in controversy for the putative class. Therein he simply states—in a conclusory fashion—that the "aggregate claim is under five million dollars." (Compl. ¶ 25.) However, Defendants

4.

challenge this assertion in their NOR by attempting to make "reasonable assumptions" to demonstrate that the aggregate claim does in fact exceed $5 million jurisdictional minimum. Now in opposing remand, Defendants submit a declaration from Kathy Brooks, Director of Human Resources Operations for Moog, Inc., which they claim shows that the amount in controversy exceeds $5 million. (*See* Declaration of Kathy Brooks ("Brooks Decl."), Dkt. No. 11-1)). Defendants' NOR calculates the amount in controversy as $11,854,969.00, based on the following:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime and Minimum Wages | **$3,065,808.81** (1 hour overtime: 47.91 (average overtime rate) x 63,991 (work weeks) x 1 hour) to **$6,131,617.62** (2 hour overtime; same, but x 2 hours) |
| Unpaid Overtime Based Upon a Shift Differential | **$39,000.00** (125 employees x 52 work weeks per year x $1.50 for 1 hour of overtime per work week) up to **$195,000.00** (125 employees x 52 work weeks per year x 4 years x 7.50) (for 2 hours of overtime per week) |
| Unpaid Rest Break Premiums | **$6,131,617.62** ($31.94 (average hourly rate) x 3 (missed rest break premiums) x 63,991 (work weeks)) based on a 30% violation rate estimate and assuming class members missed three rest periods per work week. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018). |
| Inaccurate Wage Statements | **$1,776,000** (444 employees x $4,000 maximum penalty), assuming a 100% violation rate with a $4,000 maximum penalty cap)) |

5.

| Waiting Time Penalties | **$881,544.00** (115 former employees x $31.94 (average rate of pay) x 8 hours per day x 30 days)) |
|---|---|
| Attorneys' Fees | **$2,963,742.00** (based on 25% of $11,854,969.00 calculated total and using the lower overtime damages) |

(*See* NOR at 8–14.)

### 1. Plaintiff admits and agrees that the base calculation for the amount in controversy is $4,306,997.42, excluding attorneys' fees.

In his Motion, Plaintiff initially admits and agrees that the amount in controversy is $4,313,997.42, and thus below the $5,000,000 jurisdictional threshold. (*See* Motion at 5.) Plaintiff's own calculations are as follows:

> $2,043,872.54 in rest period violations plus $306,580.88 in alleged overtime violations plus $888.000 [2] in wage statement claims plus $881,544 in 203 penalties plus $195,000 on the shift differential claim equals $4,313,997,42.[3]

(*Id.*)

Defendants maintain that, even accepting Plaintiff's calculations—which it recalculates at $4,306,997.42—the amount in controversy exceeds $5 million. (Opp'n at 2.) Specifically, Defendants claim that, based on the $4,306,997.42 figure, attorneys' fees (calculated at 25% of the amount in controversy) would catapult the amount in controversy to $5,383,746.78, clearly over the 5,000,000 minimum for federal jurisdiction. (*Id.*)

Plaintiff counters that the "violation rates in his motion to remand are more likely true than Defendant's speculative violation rates set forth in their notice and

---

[2] The Court believes that the period in "888.000" is a typo that should have been a comma signifying hundreds of thousands of dollars, not hundreds of dollars. This interpretation is also supported by Plaintiff's final calculations.
[3] The Court's calculations of Plaintiff's above-admitted numbers comes to a total of $4,314,997.42, as Defendants point out. (Opp'n at 14, n.22).

6.

repeated in their opposition. The amount in controversy is therefore, at most, $4,306,997.42." (Reply at 4.)

Here, for the purposes of this Motion, the Court will use the final, agreed-upon amount in controversy of $4,306,997.42 to calculate attorneys' fees, which are appropriately included in the total amount in controversy.

**2. Reasonable attorneys' fees should be added to Plaintiff's admitted amount in controversy of $4,306,997.42, and when added, this figure exceeds the $5 million jurisdictional threshold, rendering remand improper.**

"[A] court *must* include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (emphasis added); *see also Arias*, 936 F.3d at 922. The removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence." *Fritsch*, 899 F.3d at 795; *see also Arias*, 936 F.3d at 927–28. District courts may also rely upon "'their own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Fritsch*, 899 F.3d at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Here, Plaintiff's Complaint requests attorneys' fees, which are permitted under California law for their First, Second, Third, Fourth, Fifth, and Seventh Causes of Action. (*See* Compl. Prayer for Relief at 21–23.) Because the law allows Plaintiff to collect attorneys' fees if he is the prevailing party in the litigation, attorneys' fees are at stake and accordingly must be included in the amount in controversy calculation. *Fritsch*, 899 F.3d at 793–94.

To reach the $5 million threshold for jurisdiction to vest in this Court, based upon Plaintiff's admitted amount in controversy of $4,306,997.42, the attorneys' fees must total $693,002.58, or 13.86% of $5 million. In the CAFA context, "the Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees." *Tompkins v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL

7.

1808316, at *4 (E.D. Cal. Apr. 22, 2008) (citing *Staton v. Bowing Co.,* 327 F.3d 938, 969 (9th Cir. 2003)). Accordingly, several courts in this Circuit, including this Court, have found that 25% attorneys' fees could be reasonable in CAFA wage and hour cases. *See, e.g., Hamilton v. Wal-Mart Stores, Inc.,* Case No. ED CV 17–01415–AB (KKx), 2017 WL 4355903, at *5–6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case allowing an estimated attorneys' fee award of 25% of plaintiff's damages in calculating the amount in controversy); *Sanchez v. Russel Sigler Inc.,* 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (CAFA action finding that "the benchmark for attorneys' fees is 25% of the amount in controversy."); *Gutierrez v. Stericycle, Inc.,* Case No. LA CV15-08187 JAK (JEMx), 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."). Thus, the Court finds that an attorneys' fees rate of 13.86% is clearly reasonable, and concludes the Defendants have met their burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million for federal court jurisdiction here.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand and retains jurisdiction over this matter.

**IT IS SO ORDERED.**

Dated: February 27, 2020

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

8.